Argued and submitted May 21, 1981, motion denied September 21, reconsideration denied November 25, petition for review denied December 20, 1983 (296 Or 237)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL RAY HORINE,
*Appellant.*

## (B57-459; CA 17957)

669 P2d 797

David Lowry, Eugene, argued the cause and filed the briefs for appellant.

William F. Gary, Deputy Solicitor General, Salem, argued the cause for respondent. With him on the briefs were Dave Frohnmayer, Attorney General, and John R. McCulloch, Jr., Solicitor General, Salem.

Before Joseph, Chief Judge, and Richardson and Gillette, Judges.

GILLETTE, J.

### GILLETTE, J.

This is a criminal case in which defendant seeks review of his conviction for criminal trespass in the second degree. The brief filed by his attorney, after a short description of the incident from which the charge arose, states in its entirety:

> "Counsel for the defendant on appeal fails to discern any meritorious issues for appeal, and invites the Court to search the record for possible error. *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L Ed 2d 493 (1967); *Suggs v. United States,* 391 F2d 971 (D. C. Cir. 1968)."

Counsel simultaneously filed a motion to withdraw from the case. This is the first time that this court[1] has been called upon to describe the procedure it follows, and will follow, in *Anders* cases. We decline to accept counsel's tendered withdrawal.

In response to the brief filed by defendant's counsel, the state has filed an extensive brief contending that the brief filed on defendant's behalf does not comply with the requirements of *Anders.* The state suggests several alternative courses of action for this court, including striking the brief, searching the record, as urged by defendant's counsel, and affirming the conviction in the absence of any claim of error. The state's brief also provides a helpful survey of the cases from other jurisdictions that have considered the application of *Anders.*

---

[1] In *State v. Elliott,* 244 Or 426, 418 P2d 263 (1966), counsel was appointed for the defendant on appeal. That attorney asked to withdraw because no appealable issue could be found. The Public Defender was appointed as counsel for the defendant and also notified the court that there was no issue to raise on appeal. The defendant asked the court to appoint another attorney, and the court refused. The defendant then filed a brief *pro se.* The court determined that the appeal was without merit and affirmed the conviction. The defendant sought review in the United States Supreme Court, which remanded the case to the Oregon Supreme Court for reconsideration in light of *Anders.* On remand, the Public Defender filed a brief for the defendant, apparently arguing the same points that had been raised by the defendant in his *pro se* brief. The Oregon Supreme Court stated, however, that it had previously considered all of the issues on the first appeal and had found them without merit. The court concluded: "We have re-examined them and are still of * * * [the] opinion [that they are without merit]." 250 Or at 464. The court has had no occasion after *Anders* to consider what procedure to follow in the situation presented by this case. After 1969, of course, any burden created by *Anders* has become ours, rather than the Supreme Court's, because we are the Oregon court primarily responsible for deciding direct criminal appeals. ORS 138.040.

Defendant's counsel has in turn filed a reply brief, pointing out that the record contains no indication that defendant has been served with copies of the motion to withdraw and the brief filed on his behalf. Counsel also notes:

> "*Anders* does not say if this responsibility lies with the court, or with counsel. Oregon has no decision or rule on point. In any event, this court must now decide who has this duty — at least in this case."

This series of briefs raises the sole question: Has defendant in this case received all that he is constitutionally entitled to for the purpose of presenting his appeal?

■ Of necessity, our examination of this issue begins with a review of *Anders v. California, supra.* In *Anders,* the United States Supreme Court stated the problem as follows:

> "We are here concerned with the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." 386 US at 739.

The defendant in *Anders* was represented by court-appointed counsel who, following the procedure that had been established in California, wrote a letter advising the appellate court that he had concluded that the appeal had no merit. At the same time, he informed the court that the defendant wished to file a brief on his own behalf. After reviewing the defendant's brief and the record, the California appellate court affirmed the conviction. The United States Supreme Court, however, concluded that such an approach "does not comport with fair procedure and lacks that equality that is required by the Fourteenth Amendment." 386 US at 741.

The Court's analysis in *Anders* is instructive. First, it reviewed briefly the line of cases beginning with *Griffin v. Illinois,* 351 US 12, 76 S Ct 585, 100 L Ed 2d 891 (1956), regarding the necessity of providing a transcript for indigent defendants on appeal, through *Douglas v. California,* 372 US 353, 83 S Ct 814, 9 L Ed 2d 811 (1963), regarding appointment of counsel on appeal, and *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), regarding the right to assistance of counsel. It then turned to the merits of the case before it and found the California procedure, described above, flawed:

"On a petition for a writ of habeas corpus some six years later it found the appeal had no merit. It failed, however, to say whether it was frivolous or not, but, after consideration, simply found the petition to be 'without merit.' The [California] Supreme Court, in dismissing this habeas corpus application, gave no reason at all for its decision and so we do not know the basis for its action. We cannot say that there was a finding of frivolity by either of the California courts *or that counsel acted in any greater capacity than merely as amicus curiae * * *. Hence California's procedure did not furnish petitioner with counsel acting in the role of an advocate nor did it provide that full consideration and resolution of the matter as is obtained when counsel is acting in that capacity. * * *"* 386 US at 743. (Emphasis supplied.)

The Court then proceeded to indicate what is required of appointed counsel on appeal:

"The constitutional requirement of substantial equality and fair process can only be attained *where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

"This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not

only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal — as nearly as is practicable — as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." 386 US at 744-45.

The problems, both of interpretation and of compliance, that *Anders* presents to appellate counsel and appellate courts are significant and have, at best, become compounded since the Court's opinion issued in 1967. Courts and commentators have pointed them out. *See, e.g., State v. Romano,* 29 Utah 2d 237, 507 P2d 1025 (1973); *State v. McKenney,* 98 Idaho 551, 568 P2d 1213 (1977); Hermann, *Frivolous Criminal Appeals,* 47 NYU L Rev 701 (1972); *Note,* 49 Ind L Rev 740 (1974). A short review of these problems is the next step in our analysis.

The first problem is pin-pointing just what *Anders* holds. One commentator has suggested that the holding can be narrowed to the statement that it is "the court - not counsel" whose task it is "to decide whether the case is wholly frivolous." Hermann, *supra,* 47 NYU L Rev at 702. However, as noted in *People v. Wende,* 25 Cal 3d 436, 158 Cal Rptr 839, 600 P2d 1071, 1074 (1980), the Court in *Anders* found that the "no merit" letter followed by a review of the record by the appellate court was inadequate, because 1) counsel did not act as an advocate on behalf of his client and 2) the appellate courts that affirmed the conviction did not make express findings that the appeal was "frivolous." 386 US at 743. The Court was clearly concerned with *both* the role of the appointed attorney *and* the role of the appellate court.

The cases that *Anders* cited for support shed some light on the Court's concerns. In *Griffin v. Illinois,* 351 US 12, 76 S Ct 585, 100 L Ed 2d 891 (1956), the petitioner sought a transcript at state expense for his appeal. The state allowed appeals as of right but provided transcripts only in death

penalty cases. The state admitted that the petitioner required the transcript to obtain review of the trial errors he alleged. The Supreme Court held that, although a state need not, constitutionally, provide appellate review, when it does so, equal justice is not afforded an indigent appellant when the nature of the review "depends on the amount of money he has." It held that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." 351 US at 19. The Court indicated that its decision was based on both the Due Process and Equal Protection clauses of the Fourteenth Amendment, noting that both "emphasize the central aim of our entire judicial system — all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bars of justice in every American court.' " 351 US at 17. Ability to pay cannot be determinative: "In criminal trials a state can no more discriminate on account of poverty than on account of religion, race or color." 351 US at 17-18.

In *Douglas v. California,* 372 US 353, 83 S Ct 814, 9 L Ed 2d 811 (1963), the petitioners had been denied appointed counsel for appeal. The appellate court stated that "it had 'gone through' the record and had come to the conclusion that 'no good whatever could be served by appointment of counsel.' " 372 US at 355. The Court held that a state may not establish a procedure under which "the type of appeal a person is afforded in the District Court of Appeals hinges upon whether or not he can pay for the assistance of counsel." 372 US at 355. The difficulty with the California procedure was that the court would review a case after briefing and argument only if the appellant could afford counsel. If the appellant could not afford to retain counsel, the appellate court looked at "* * * only the barren record" and,

> "* * * unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an ex parte examination of the record that the assistance of counsel is not required." 372 US at 356.

The Court went on to explain that the discrimination is not between

> "* * * 'possibly good and obviously bad cases,' [as the state had contended] but between cases where the rich man can

require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by the preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." 372 US at 357-58.

Similarly, the Court has held that a state may not base the decision of whether to provide an indigent appellant a transcript at state expense on the trial judge's determination of whether "in his opinion justice will thereby be promoted." *Eskridge v. Washington State Board,* 357 US 214, 78 S Ct 1061, 2 L Ed 2d 1269 (1958):

"* * * The conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript." 357 US at 216.

Neither may the provision of a transcript depend on a determination by the Public Defender that the appeal would be unsuccessful. *Lane v. Brown,* 372 US 477, 83 S Ct 768, 9 L Ed 2d 892 (1963).

The Court in *Anders* stated that it continued to adhere to the principles set forth in the aforementioned cases as well as in *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), which held that the right to counsel in criminal cases extends to the states through the Fourteenth Amendment. Although *Anders* implicates broad philosophical concepts—the rights to due process, equal protection and counsel—the central principle that *Anders* seeks to apply is relatively straightforward, at least in the abstract: An indigent criminal defendant has a right to the same basic means of presenting an appeal as a defendant who is not indigent. *See Britt v. North Carolina,* 404 US 226, 92 S Ct 431, 30 L Ed 2d 400 (1971). Those means include access to a transcript of the proceedings below or an equivalent alternative, *Griffin v. Illinois, supra,* and the right to a court-appointed attorney, *Douglas v. California, supra,* acting on the defendant's behalf, *Ellis v.*

*United States,* 356 US 674, 78 S Ct 974, 2 L Ed 2d 1060 (1958). None of those means may be denied on the basis of a determination of a trial court, appellate court or attorney that the appeal is without merit.

■    In summary then, the *Anders* issue is: What is to happen if an indigent appellant has been provided with both a transcript and appointed counsel, and counsel determines, after a conscientious examination of the record and the legal authorities, that there are no non-frivolous issues to present on appeal? *Anders'* apparent answer, and holding, is that counsel must raise whatever *frivolous* issues may appear from the record, with references to the record and appropriate legal authorities. This exercise must be performed even though the authorities that counsel cites will only demonstrate that the issues are frivolous. *Anders* then allows counsel to seek to withdraw.[2] At this point, the appellant must be supplied with a copy of counsel's brief and given an opportunity to raise whatever additional points he or she chooses. After "a full examination of all of the proceedings," the court rules on counsel's request.

These elaborate procedures are, we believe, a disservice to appellate counsel, appellate courts and criminal appellants. In addition, they are not necessary to vindicate constitutional principles. We examine each of these difficulties in turn.

*Anders* creates several distinct problems for appellate counsel. The first difficulty arises from each attorney's ethical obligation to refrain from asserting frivolous claims. *See* DR 2-109; 2-110; 7-102. The Court in *Anders* states that the "no merit" letter—which is the most direct alternative to the assertion of a frivolus claim—does not fulfill the attorney's obligation to the client. The Court states that "counsel should, and can with honor and without conflict, be of more assistance to his client and to the court." 386 US at 744.

The attorney's obligation "to be of more assistance" brings us to the second problem: the language in *Anders* seems to require the impossible. If, after conscientious examination

---

[2] Even if counsel does not tell the court in the brief *haec verba* that the issues presented are all frivolous, the fact of the motion to withdraw informs the court of that conclusion.

of the record and consultation with the client, counsel concludes that an appeal would be frivolous,[3] counsel must take *some* action. If earnest attempts to persuade the client that appeal is not warranted fail, counsel must

> "* * * support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." 386 US at 744.

The obvious problem is that, if counsel has concluded that the appeal is "wholly frivolous," counsel has necessarily also concluded that there is nothing in the record that might "arguably support" the appeal.

Finally, although *Anders* purports to require counsel to act as an advocate for the client, its effect may be just the reverse. If counsel must file a brief after determining that the appeal has no merit, that brief may ultimately be a brief against the client. *See* Herman, *supra.* Counsel is thereby put in the uncomfortable, not to say unethical, position of arguing against the client's interests.

The dilemmas facing appointed counsel are demonstrated by a review of the case law. Counsel might, as was done in this case, simply notify the appellate court that a non-frivolous issue on which to base an appeal has not been found. The notice is usually accompanied by a motion to withdraw as counsel. The difficulty is that this procedure appears to be exactly the procedure *Anders* disapproved. Some courts have, nonetheless, apparently accepted it. *See, e.g., McCultough v. State,* 94 Nev 51, 574 P2d 585 (1978); *Beckette v. State,* 31 Md App 85, 355 A2d 515 (1976); *State v. Vowell,* 25 Ariz App 404,

---

[3] Although it has been suggested that the narrow distinction made in *Anders* is between "non-meritorious" and "frivolous" appeals, *see* American Bar Association, Standards Relating to the Prosecution Function and the Defense Function, Rule 8.3(b) (Approved Draft 1971), we do not read *Anders* as making that limited distinction. It seems clear that counsel should not be dissuaded from filing a brief on behalf of the client because of a belief that the claims of error may not be found to be reversible by the appellate court, if there exists some basis for raising those claims. The problem presented by *Anders,* and the case before us, arises only when counsel is unable to find any non-frivolous issues to present on appeal. By "non-frivolous," we mean an issue for which a reasonable argument can be made, including suggested changes in the law.

544 P2d 228 (1976); *United States v. Barrow,* 540 F2d 204 (4th Cir 1976). Other courts have specifically held that such a procedure does not satisfy *Anders'. See, e.g., United States v. Johnson,* 527 F2d 1328 (5th Cir 1976); *Government of Canal Zone v. Jimenez G.,* 580 F2d 897 (5th Cir), *cert den, sub nom, Jimenez (Gonzales) v. Government of Canal Zone,* 439 US 990, 99 S Ct 590, 58 L Ed 2d 664 (1978); *McCracken v. State,* 439 P2d 448 (Alaska 1968); *State v. Duncan,* 57 Ohio App 2d 93, 385 NE2d 323 (1978).

At least one court has held that counsel must file a brief although it is, in fact, a brief against the client, *see State v. McKenney, supra;* while other courts have held that counsel may limit such a brief to a "brief statement of the facts and applicable law" and ask to withdraw, without arguing the case against the client. *People v. Feggans,* 62 Cal Rptr 419, 67 Cal 2d 444, 432 P2d 21 (1967); *see Suggs v. United States,* 391 F2d 971 (DC Cir 1968); *Commonwealth v. Baker,* 429 Pa 209, 239 A2d 201 (1968); *Commonwealth v. Collier,* 489 Pa 26, 413 A2d 680 (1980).

Yet another court has adopted the American Bar Association's recommendation[4] that, given the procedure required by *Anders,* appointed counsel ought not seek to withdraw:

> "While ethical considerations militate strongly against advancing weak or frivolous contentions that would not otherwise be presented, a rather different situation arises if those questions will face the court in any event. The court must deal with the questions, no matter how far-fetched. The court's processes will be aided, not impeded, if a trained legal mind has been applied to the presentation of the issues. This consideration surely underlies the Supreme Court's position in *Anders.*"
> ABA Standards Relating to the Defense Function, Commentary at 299-300 (T.D. 1970).

*State v. Gates,* 466 SW 2d 681 (Mo 1971) (adopting ABA approach). North Dakota has adopted the converse approach in *State v. Lewis,* 291 NW2d 735 (ND 1980), holding that the court should appoint another attorney when appellate counsel has concluded that an appeal is without merit.

---

[4] The dilemma presented to appointed counsel by *Anders* has been recognized by the American Bar Association in its Standards Relating to the Prosecution Function and the Defense Function, Rule 8.3(b) (Approved Draft 1971).

As diverse as they are, all of the procedures adopted by the courts for meeting *Anders'* requirements, and resolving the attorneys' dilemmas, are designed to present the cases to the appellate courts. This brings us to a consideration of the difficulties that *Anders* poses to those courts.

*Anders* has almost universally been read to require that the appellate court review the entire record to determine whether the appeal is, in fact, frivolous. *See, e.g., United States v. Jackson,* 578 F2d 1162 (5th Cir 1978); *United States v. Buigues,* 568 F2d 269 (2d Cir 1978); *Gainous v. State,* 436 SW2d 137 (Tex Crim App 1969); *State v. Porter,* 125 Ariz 355, 609 P2d 1055 (1980); *McCracken v. State,* 439 P2d 448 (Alaska 1968); *Mapp v. State,* 557 P2d 912 (Okla 1976); *McCultough v. State,* 94 Nev 51, 574 P2d 585 (1978); *State v. Madera,* 24 Was App 354, 600 P2d 1303 (1979); *Beckette v. State,* 31 Md App 85, 355 A2d 515 (1976); *Houston v. State,* 385 So2d 8 (Fla App 1980); *Bethay v. State,* 237 Ga 625, 229 SE2d 406 (1976); *Torrence v. State,* 599 SW2d 746 (Ark 1980); *People v. Evans,* 58 Ill App 3d 681, 374 NE2d 1071 (1978); *Snyder v. State,* 262 NW2d 574 (Iowa 1978); *People v. Crawford,* 71 App Div 38, 421 NYS2d 485 (1979); *Smith v. State,* 173 Ind App 433 363 NE2d 1295 (1977). *But see Suggs v. United States, supra* (Danaher, J., dissenting); *People v. Wende,* 87 Cal App 3d 389, 150 Cal Rptr 840 (1979), *rev'd,* 25 Cal 3d 436, 158 Cal Rptr 839, 600 P2d 1071 (1980).

Leaving aside for the moment the burden that places on the appellate courts, the process creates an anomaly: an appellate court must search the record for error when counsel has found *none,* although it need not do so when counsel finds and argues *one* claim of error. As noted by the court in *People v. Wende, supra,*

> "* * * under this rule counsel may ultimately be able to secure a more complete review for his client when he cannot find any arguable issues than when he raises specific issues, for a review of the entire record is not necessarily required in the latter situation. * * *" 600 P2d at 1075.

*Anders* does not explain why such a review is required by due process, equal protection, the right to counsel or any other constitutional provision. The indigent appellant certainly has the same right to present an appeal as one who is not indigent, but it is not clear why an indigent should have a right

to a more comprehensive appeal process than a non-indigent.[5] We presume here, as we do in every criminal appeal, that counsel is acting competently on behalf of the appellant. Although there is a possibility that counsel might overlook a non-frivolous issue, that possibility exists in any appeal. Counsel might raise only one claim of error, which the court determines does not require reversal, while other, potentially reversible, errors were not discovered by counsel. If those errors are not appropriately brought to the attention of this court then we do not, and cannot, search the record in every criminal case to discover them.[6] In Oregon, if counsel has performed incompetently in a criminal appeal, post-conviction proceedings are available to remedy that failure. *See* ORS 138.510 *et seq.*

---

[5] *Suggs v. United States, supra,* suggests that at least part of the rationale for the *Anders* procedure is appearances:

> "* * * [F]inal judgment against an indigent should not be compromised by a possibility that a different result would have ensued if only he had the resources to retain his own lawyer, instead of being required to accept counsel selected by the court. Much depends on a system that avoids suspicion of such compromise, for reasons that include awareness that where there is a basis for such suspicion prospects of rehabilitation are stifled. Justice must not only be done, it must appear to be done. *Offutt v. United States,* 348 U.S. 11, 14, 75 S. Ct. 11, 99 L. Ed. 11 (1954)." 391 F2d at 974.

Similarly, the Supreme Court has suggested in *Mayer v. Chicago,* 404 US 189, 92 S Ct 410, 30 L Ed 2d 372 (1971), that a significant factor in the decisions regarding indigent appeals may be "form":

> "Arbitrary denial of appellate review of proceedings of the State's lowest trial courts may save the State some dollars and cents, but only at the substantial risk of generating frustration and hostility toward its courts among the most numerous consumers of justice." 404 US at 197-98.

[6] Since that time and up to this case there has been no "pure" *Anders* problem in Oregon. That is, until this case, appointed counsel have not sought to withdraw from representation on appeal on the ground of lack of meritorious issues. Pursuant to ORS 138.500(1) and ORS 151.250, the Public Defender represents most indigent felony defendants; local public defenders or appointed private practitioners represent indigent felony defendants who do not obtain the services of the Public Defender and all other indigent defendants, except in cases where those indigent defendants choose to represent themselves on appeal. Determining the merit of an appeal has been a judicial process.

"Non-meritorious" appeals represent a serious problem in the Oregon judicial process. Due to a number of factors, including changes in the law through the decisional process or by legislation and the historical tendency of the legislature to broaden the availability of appeal in criminal matters, the workload of this court in criminal cases has burgeoned. In 1974 there were 425 direct criminal appeals filed; in 1982 there were 1333 criminal appeals filed. In 1982, this court decided 1043 criminal appeals, 465 of which were affirmed from the bench at the time of argument. We affirmed a substantial additional number without opinion after submission. That means that more than half of the direct criminal appeals heard and determined by this

The final, and most significant, problem with *Anders* is that the hardships it imposes upon appointed counsel and appellate courts are unnecessary to vindicate constitutional principles. As the Supreme Court pointed out in *Ross v. Moffitt,* 417 US 600, 94 S Ct 2437, 41 L Ed 2d 241 (1974), even though the constitutional basis for the *Griffin* and *Douglas* line of cases is found in the Due Process and Equal Protection Clauses, the due process rights of a defendant after conviction are not nearly so compelling as those which exist before a determination of guilt has been made. This is in large part because the state need not provide any appeal at all from criminal convictions. *See McKane v. Durston,* 153 US 684, 14 S Ct 913, 38 L Ed 867 (1894). *Ross* held that the fact that an appeal has been provided does not require that the state provide counsel to indigent defendants at every step of the procedure. The Court stated:

> "* * * Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protectional analysis." 417 US at 611.

The Court then went on to point out the limits of equal protection requirements:

> "Despite the tendency of all rights 'to declare themselves absolute to their logical extreme' there are obviously limits

---

court in 1982 were deemed to be without sufficient substance to merit any written opinion by this court.

The raw numbers convey only a hint of the scope of the problem. For a full comprehension it is necessary to contemplate the amount of time, expense and other resources devoted to support the end result of affirming wholly non-meritorious criminal cases: *e.g.*, furnishing transcripts or audio records, preparing briefs, studying briefs, hearing arguments, doing clerical work, administering the process and paying the cost of appeals (including attorney fees). Those are the direct, calculable costs. The indirect, incalculable costs are also large; from the point of view of the judges of this court, those costs are reflected primarily in the time and effort not available to do other, at least equally appropriate, work. A court facing an increasing burden of work, the fact of presently decreased resources and the probability of even more stringent reductions in resources (or at best little or no restoration of previous reductions) must consider whether there are ways to put the available resources where the need really is. Coming as it did in the early days of judicial expansion of the rights of defendants in the criminal justice process, *Anders* can hardly be said to have taken note of the *quantitative* aspects of the overall problem. Rather than being part of the solution, the *Anders* process has become one of the largest parts of the problem.

beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' * * * nor does it require the State to 'equalize economic conditions.' * * * It does require that the state appellate system be 'free from unreasoned distinctions,' * * * and that indigents have an adequate opportunity to present their claims fairly within the adversary system. * * * The State cannot adopt procedures which leave an indigent defendant 'entirely cut off from any appeal at all,' by virtue of his indigency, * * * or extend to such indigent defendants merely a 'meaningless ritual' while others in better economic circumstances have a 'meaningful appeal.' * * * The question is not one of absolutes, but one of degrees." 417 US at 611-12. (Footnote omitted; citations omitted.)

After holding that the state is not required to provide counsel at state expense for discretionary appeals to the state Supreme Court, the Court went on to explain:

"* * * And the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process. * * *." 417 US at 616.

In the light of the foregoing pronouncements, it appears clear that the requirements of due process and equal protection ought not to demand the procedure suggested in *Anders.* We reject at the outset the idea that an indigent appellant has a constitutional right to a more comprehensive appeal process than a non-indigent appellant; after *Ross v. United States, supra,* it is difficult to imagine how the Supreme Court could now so hold. Rather, the basic necessities for a criminal appeal are a transcript of the proceedings below, or an equivalent alternative, and a competent attorney to examine the record and the law conscientiously as an advocate for the appellant. We agree with the *Anders* court that it is not the function of such an attorney to decide the merits of the appeal. Counsel should, and must, raise whatever issues "arguably support the appeal," including arguments for change in established law when a basis for advocating such change exists. If,

however, after conscientious examination of the case, appointed counsel determines that there are no non-frivolous issues to present on appeal, counsel should so notify the court and the appellant.

At this point, our approach diverges from that approved by *Anders,* for we are certain that the right to counsel does not require appointed counsel to present frivolous issues to the appellate court.[7] In Oregon, at least, indigent appellants have the right to be "assisted by an attorney exercising professional competence and judgment." *Storms v. Cupp,* 13 Or App 273, 276, 508 P2d 450 (1973); *see also Rook v. Cupp,* 18 Or App 608, 526 P2d 605 (1974). We are convinced that they receive such assistance when one attorney, in exercising professional competence and judgment, determines that there are no non-frivolous issues to raise on appeal. That is, in fact, the same exercise of judgment that takes place when an attorney finds *one* arguable issue to raise and determines that there are no other non-frivolous issues presented by the case; we see no constitutional distinction between those situations.[8]

When appointed counsel has made such a determination and has notified this court and the appellant, the appellant will be allowed to raise whatever issues he or she chooses to raise. If the appellant appropriately raises issues before this court, we will consider those issues as we would otherwise do. If the appellant *pro se* raises no issues, the conviction will be affirmed. We will not search the record for error any more than we do in other criminal appeals.

Although this court has not been presented with a large number of *"Anders* briefs" in the past, we now have pending several such "briefs," presented in various ways. If appointed counsel were to refrain from presenting all frivolous issues on appeal, we suspect that the number of cases in which we would be required to conduct such a search under *Anders*

---

[7] The right to counsel does not even require that appointed counsel present all *non-frivolous* issues to the appellate court. *Jones v. Barnes,* 463 US 745, 103 S Ct 3308, 77 L Ed 2d 987 (1983).

[8] If there is such a constitutional distinction, this case presents an ideal opportunity for the United States Supreme Court to declare it. As noted in n 7, *supra,* the Court has recently held that a criminal defendant has no right to have his counsel argue frivolous contentions on appeal, at least where non-frivolous issues are present. *Jones v. Barnes, supra* n 7.

would be substantially higher. We would be unable, we are certain, to search the records in such cases and provide adequate appellate review for other criminal cases on appeal before this court. Given the steadily increasing number of criminal appeals, this court cannot search the record for error in even a small number of cases.[9] More importantly, we do not believe that the state or federal constitution require that this court undertake such a task.

As we have suggested above, indigent appellants are constitutionally protected by the procedures that are available to them on appeal in Oregon.[10] Those include a transcript or its equivalent alternative supplied at state expense and an attorney, appointed by the court and paid by the state, to represent the interests of the appellant. When that attorney has reviewed the law and the record as an advocate and determines that there are no non-frivolous issues to be raised on appeal, the appellant has received what is constitutionally required. Aside from the opportunity to present issues *pro se,* the appellant is not entitled to further protection at state expense. Under this procedure, the only thing that is denied an indigent appellant that a wealthier appellant has available is the chance to go from one attorney to another until an attorney is found who can spot an issue that he or she believes can appropriately be presented on appeal. The fact that some non-indigent appellants might undertake such a search does not mean that it is constitutionally required. *See Britt v. North Carolina, supra.*

Our statement of the constitutional rule as we believe it is (or will be declared to be) brings us, full circle, to the merits of this case. Because appellant here has not been given notice of the brief filed by counsel, we will suspend further consideration of this appeal until counsel has furnished appellant with a

---

[9] See the statistics in n 6, *supra.*

[10] We understand that by saying that the United States Supreme Court was wrong—or, perhaps more accurately, overstated its holding—in *Anders* and that we will not follow literally certain of its language, we open ourselves to serious criticism. We do not feel, however, that our obligation to follow the federal Constitution as that document has been interpreted from time to time means that we are not permitted to utilize our critical faculties in assessing a constitutional issue. We are convinced that, should the Supreme Court be called on today to reassess *Anders* in light of other procedural protections available in states such as Oregon, it would hold that the procedures implied in *Anders* are not the only ones that will meet due process and equal protection requirements.

copy of the brief and has offered to make the appellate record available to appellant for his own review. Appellant should be informed that, within 30 days of the date of service of the brief upon him, he may notify the court, through his present counsel or by himself, whether he wishes to proceed with the appeal. If we do not receive such notification within that period, we will affirm the judgment below. If the requisite notice is given this court by appellant, we will issue an order permitting him to proceed *pro se* and fixing a time for the *pro se* brief to be filed. In that event, counsel's appointment will be terminated effective on the date of notice or on the date when the record has been transmitted to appellant, whichever is later. In the event that counsel is unable to serve appellant due to lack of knowledge of his whereabouts, after due diligence in attempting to inform appellant, counsel shall notify this court of that fact and the appeal will be dismissed as abandoned.

Motion to be allowed to withdraw as counsel denied.