Argued and submitted April 20, 1983, reversed and remanded February 8, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# EDWARD JOHN ANDERSON,
*Appellant.*

## (M79250; CA A26461)

677 P2d 39

Chris Mohr, Portland, argued the cause and filed the brief for appellant.

Kay Kiner James, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Defendant was arrested for DUII in March, 1981. Because he was indigent,[1] counsel was appointed for him. He pled guilty in September, 1981. It was his first offense, and at his request the court placed him in the DUII rehabilitation program then in operation. ORS 484.385 (since *amended by* Or Law 1981, ch 803, § 10).[2] The program was run by a private agency that charged a $150 fee for participation. Defendant was unable to pay the fee and returned to court in late November, asking that the fee be waived, that the public pay it or that his case be dismissed. The court held that it was without authority to waive the fee or to order the county to pay it and refused to dismiss the case. Instead, it offered defendant his choice of a one-year continuance in which to raise the money or a withdrawal of his guilty plea and a jury trial. Defendant chose the one-year delay. At the end of the year he still had not raised the money,[3] and the court ultimately

[1] As far as we can tell from the record, during the entire period involved in this case, defendant, who is in his early 30s, lived with his parents. He had an unresolved workers' compensation claim, and his only income was $70 monthly in food stamps.

[2] Before the 1981 amendments, ORS 484.385(2) and (3) provided:

"(2) When a person charged with driving while under the influence of intoxicants has not been convicted or found guilty of that offense previously and does not have another charge of driving while under the influence of intoxicants pending against him, the court having original jurisdiction over the case, after the defendant has been adjudicated guilty of the offense, and in addition to those powers conferred upon the court by ORS 484.415, may, with the consent of the defendant, request a diagnostic assessment to determine if the defendant is a problem drinker or alcoholic by a program approved by the Mental Health Division. If a person is determined to be a problem drinker or alcoholic, the court may order a course of treatment or rehabilitation as recommended by the director of the program. The court may condition the order in any manner it considers appropriate to further the end of rehabilitation, but one condition shall be that the person charged not be arrested again for driving while under the influence of intoxicants during the course of the rehabilitation program.

"(3) If the defendant successfully completes the rehabilitation program and complies with all of the conditions set forth in the court's order, no other sentence may be imposed for the offense. If the defendant fails to successfully complete [sic] the rehabilitation program or to comply with any condition set forth in the court's order, the court shall pronounce judgment upon the offense."

In 1981 the legislature adopted a program of diversion for accused first-time DUII offenders to replace the rehabilitation program. ORS 484.445 to 484.480. Under the diversion program all fees are based on ability to pay and may be waived entirely if the defendant is indigent. ORS 484.445(4)(c); 484.450(2). There is a special fund, derived from the diversion filing fee, to pay for the treatment of indigents. ORS 484.480.

[3] The state in its brief points out that he needed to save only $12.50 per month to comply with the court's conditions. However, the state did not contend at the trial

entered a judgment of conviction and imposed a $100 fine. He appeals on the ground that denying him the opportunity of a rehabilitation program because of his indigency violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[4] We agree and reverse.

If defendant's inability to enter the rehabilitation program merely denied him a sentencing alternative, it would be difficult to find an equal protection violation, especially because his ultimate sentence involved a fine less than the cost of the program. However, successful completion of the program would have allowed him to avoid any conviction and its legal and practical consequences.[5] The trial court construed the law to require dismissal of the charge upon successful completion of the program and indicated that dismissal was the normal result in Multnomah County. Although the statute does not expressly so provide, we believe that that construction is correct.

ORS 484.385(3), before its amendment by Or Laws 1981, ch 803, § 10, provided that, if the defendant successfully completed the rehabilitation program and complied with all of the requirements of the court's order, "no other sentence may be imposed for the offense." However, if the defendant failed to complete the program, "the court shall pronounce judgment upon the offense." The first phrase, in conjunction with the requirement that defendant plead or be found guilty before the court could consider ordering a course of rehabilitation, implies that the order is the court's sentence on the conviction, subject to the defendant's successfully completing the

---

level that defendant did not attempt in good faith to procure the money nor did the court so find, and his meager resources adequately explain his failure to accumulate and pay the $150 fee.

[4] Defendant raises no issues under the Oregon Constitution.

[5] The legal consequences include that his driver's license might be suspended under ORS 484.415(2) (since *amended by* Or Laws 1983, ch. 507, § 14, Or Laws 1981, ch. 718, § 5 and Or Laws 1981, ch. 818, § 37), a second conviction would result in the automatic suspension of his driver's license, ORS 482.430 (since *amended by* Or Laws 1983, ch. 507, § 10, Or Laws 1983, ch. 584, § 1, Or Laws 1981, ch. 803, § 3 and Or Laws 1981, ch. 818, § 5b), and would be punishable as a Class A misdemeanor, *former* ORS 484.365 (*repealed by* Or Laws 1981, ch. 803, § 26) by imposition of a term of imprisonment of one year, ORS 161.615, and imposition of a fine of $1000. ORS 161.635 (since *amended by* Or Laws 1981, ch. 390, § 2); ORS 482.430(3), (since *amended by* Or Laws 1981, ch. 803, § 3). Practical consequences include the possibility of greatly increased automobile insurance premiums.

program, much like an order granting probation. The second phrase implies that the court does not pronounce judgment (and thus enter a conviction) as part of the rehabilitation order, but does so only if a defendant fails successfully to complete the course of rehabilitation. The purpose of rehabilitation is to keep first offenders from becoming repeaters, and avoiding a conviction is a significant incentive for first offenders to participate in a rehabilitation program. Because the maximum sentence on a first conviction for DUII is a fine of $1,000, while a second conviction carries the additional possibility of imprisonment for a year, avoiding the first conviction may be the most important incentive for many defendants. The ambiguity of the statutory language, in conjunction with the statutory purpose, leads us to conclude that the first phrase should read, in effect, that upon successful completion of the program "no sentence may be imposed for the offense." This reading gives meaning to the provision in the second phrase that the court, upon the defendant's failure to complete the program, "shall pronounce judgment." Only if a defendant fails to complete the program can there be a judgment of conviction, and successful completion means that there can be no judgment of conviction.[6]

■■ Thus, the trial court entered a judgment of conviction against defendant for first-offense DUII because of his indigency. Although first-offense DUII is a traffic infraction, rather than a crime, it has sufficient criminal characteristics to entitle a defendant to criminal procedural rights. *Brown v. Multnomah County District Court,* 280 Or 95, 570 P2d 52 (1977). Wealth or lack of it is not a suspect classification for general equal protection purposes, *San Antonio School Dist. v. Rodriguez,* 411 US 1, 93 S Ct 1278, 36 L Ed 2d 16 (1973), but failure to provide equal treatment to indigents in criminal proceedings impinges on a fundamental interest. "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin v. Illinois,* 351 US 12, 19, 76 S Ct 585, 100 L Ed 891 (1956).[7]

---

[6] Arguments in the state's brief are based on the assumption that a rehabilitation program is a sentencing alternative, not a way in which a defendant can avoid a conviction entirely. Because that assumption is wrong, most of its arguments miss the point.

[7] We recently discussed Supreme Court cases dealing with other rights of indigent defendants in *State v. Horine,* 64 Or App 532, 537-39, 669 P2d 797 (1983).

Federal Supreme Court decisions most applicable to this case are *Tate v. Short,* 401 US 395, 91 S Ct 668, 28 L Ed 2d 130 (1971), and *Williams v. Illinois,* 399 US 235, 90 S Ct 2018, 26 L Ed 2d 586 (1970), which hold that requiring an indigent defendant to "work off" a fine by serving a term of imprisonment violates equal protection. Once it has defined the outer limits of its penological interest in incarceration, the state may not impose additional incarceration on a class of defendants solely because of their indigency.

> "* * * Here the Illinois statute as applied to Williams works an invidious discrimination solely because he is unable to pay the fine. On its face the statute extends to all defendants an apparently equal opportunity for limiting confinement to the statutory maximum simply by satisfying a money judgment. In fact, this is an illusory choice for Williams or any indigent who, by definition, is without funds. Since only a convicted person with access to funds can avoid the increased imprisonment, the Illinois statute in operative effect exposes only indigents to the risk of imprisonment beyond the statutory maximum. By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment."
> *Williams v. Illinois, supra,* 399 US at 242 (footnotes omitted).

The Supreme Court's language is pertinent here. The state has defined the outer limits of its penological interest by determining that certain defendants are entitled to participate in a rehabilitation program and thereby avoid a conviction for the offense.[8] Defendants nominally entitled to participate include both indigents and non-indigents. However, the requirement of a fee means that there are in fact two classes of defendants: (1) first-time offenders who are appropriate candidates for rehabilitation and who are indigent and (2) first-time offenders who are appropriate candidates for rehabilitation and who are not indigent. For both classes the legislature has determined that the limit of the state's penological interest is successful completion of a rehabilitation program and that they should receive no other sanctions, including the sanction of a conviction. Yet, as a practical matter, those in

---

[8] The court found defendant to be an appropriate candidate for rehabilitation.

the first class are denied the opportunity for a rehabilitation program and suffer a conviction, with all its consequences, solely because they are unable to pay the cost of the program. Because only a person with access to funds can enter a rehabilitation program, the statute in its operative effect denies only those who are indigent the opportunity to avoid conviction. It thus, in fact, denies its benefits to one of the two classes, with no state penological interest justifying the distinction.[9]

█    Because defendant's failure to enter a rehabilitation program was solely the result of his indigency, the effect of the statute was to discriminate against him in a way that violates the Fourteenth Amendment. We find no authority in the applicable version of ORS 484.385, or elsewhere, for the court either to waive the private agency's fee or to require public payment of it.[10]

Reversed and remanded.

---

[9] Of course, any defendant who fails the program or its associated requirements will suffer a conviction. However, both indigents and non-indigents should have the same opportunity to succeed or to fail.

[10] Although defendant has already had a year to raise the money to enter the program, and more time has now passed, we remand the case for the court to consider the availability of alternatives to dismissal, such as installment payments or additional time to raise the necessary funds. *See Williams v. Illinois,* 399 US at 244 n 21. Whether he is eligible for diversion under the 1981 law is not before us.