**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Arthur Minkoff CLAWSON,
Defendant–Appellant.**

**No. 86–3150.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1987.

Decided Nov. 5, 1987.

Frank Noonan, Portland, Or., for plaintiff-appellee.

Steven T. Wax, Portland, Or., for defendant-appellant.

Before T. GOODWIN and FERGUSON, Circuit Judges, and STEPHENS,* District Judge.

GOODWIN, Circuit Judge:

Arthur Minkoff Clawson was convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. App. § 1202(a).[1] At the government's request, the court imposed an enhanced penalty under § 1202(a)'s Armed Career Criminal provision. On appeal Clawson challenges: (1) the admissibility of evidence, (2) the sufficiency of proof of the interstate transportation element of the firearm offense, (3) the lawfulness of the stop of the car in which Clawson was a passenger, (4) the constitutionality of one of the prior convictions used to enhance his sentence, and (5) the constitutionality of the Armed Career Criminal Act.

On November 10, 1985, two Portland police officers, acting on an informant's tip regarding a check forgery operation, staked out the Chumaree Motel in Portland. In the motel parking lot, detectives Larry Kochever and Carolyn Wooden–Johnson observed two cars that matched the description given by the informant of the suspects' vehicles. When the officers suspected that the forgery suspects were attempting to leave the parking lot in one of the cars, Officer Wooden–Johnson pulled the unmarked police car up behind them. Clawson then got out of the car.

According to Officer Kochever, he identified himself as a police officer and told Clawson that he would like to talk to him. In response, Kochever said, Clawson began running and, after taking a few steps, reached for the small of his back as if to draw a gun from the waistband on the back of his pants. Kochever then drew his gun and ordered Clawson to freeze. Clawson stopped.

Clawson testified that he never tried to run and that Kochever pointed his gun at him without provocation, saying "Freeze or I'll shoot." He said that he was merely trying to put on a jacket and made no menacing moves.

In the meantime, Officer Wooden–Johnson testified, she had told the car's driver, Penn, to stop. Penn refused, pulling the car away suddenly then stopping a short distance away. This happened a second time, with Penn telling the officer that she had a gun. When Wooden–Johnson approached the car a third time, she saw Penn reach for what appeared to be a gun. Wooden–Johnson shot and wounded Penn.

During the altercation between Penn and Wooden–Johnson, Officer Kochever made Clawson lie on the ground and handcuffed his hands behind his back. Officer Kochever testified that Clawson then rolled on his side and made a movement as if he were drawing something out of his waistband. The officer then grabbed Clawson by his jacket and pushed him back to the ground. Kochever testified that he heard something hit the ground, then saw the gun on the ground behind Clawson. Clawson testified that he was wearing Penn's jacket by mistake and had been unaware that the gun was in the pocket.

### Evidentiary Issues

■ Before trial, Clawson signed an affidavit of ownership in support of a motion

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

1. Section 1202(a) was repealed effective 180 days after May 19, 1986, by the Firearms Owners' Protection Act, Pub.L. 99–308, § 104(b) (1986). Section 1202(a) remains applicable in this case because the conviction was final before the statute's repeal became effective.

in state court for return of property, including a pistol the police had seized. The government relied on Clawson's state-court affidavit in this trial to prove that Clawson claimed to own the gun. Clawson argues that the district court erred in permitting the government to introduce the evidence, citing *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

*Simmons* held that when a defendant testifies in support of a motion to suppress evidence on fourth amendment grounds, his testimony may not be admitted against him at trial to prove that he possessed the evidence. *Simmons* rested upon the undesirability of forcing the defendant to choose between his fifth amendment right against self-incrimination and his fourth amendment right to object to government seizure.

However, *Simmons* does not extend to all situations in which the defendant makes pre-trial motions indicating his ownership of seized evidence. *See e.g., United States v. Flores,* 679 F.2d 173, 177–78 (9th Cir. 1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983). The *Flores* court rejected the defendant's argument that *Simmons* applied to voluntary admissions. *Id.* Clawson voluntarily made his affidavit in support of a motion for return of things seized. The motion was a civil motion in state court. He was not forced to choose between constitutional rights. The trial judge correctly ruled that *Flores* —not *Simmons*—applies.

■ Clawson also argues that his affidavit should have been excluded under Fed.R. Evid. 403 because it injected collateral issues that were confusing and prejudicial. The affidavit showed on its face that he was a convict in state custody on unrelated charges. The court offered to mask the irrelevant information, but Clawson objected to the document being received in any form. The document was relevant and was made voluntarily. There was no error in receiving it.

■ Clawson also argues that the district court erred in admitting evidence regarding Penn's altercation with Officer Wooden–Johnson. He contends that the testimony had slight relevance, and that it was unfairly prejudicial. There was no error. The evidence had more than slight probative value. This is a situation in which parties had a hand in creating their own evidentiary problem. Clawson's version of events differed in crucial respects from Officer Kochever's. Credibility was an issue. The testimony regarding Penn's confrontation with Wooden–Johnson helped complete the picture of events that led to the discovery of Clawson's gun, and thereby gave the jury a basis on which to resolve an important conflict in the testimony.

■ In determining whether the prejudicial effect of the evidence so far outweighs its probative value that the evidence should be excluded, trial courts are given wide discretion. *United States v. Federico,* 658 F.2d 1337, 1342 (9th Cir. 1981). Given the importance of presenting the jury with an accurate version of Clawson's actions, the trial court did not abuse its discretion in admitting evidence concerning Penn's action.

### Interstate Transportation Element

■ Clawson attacks the trial court's ruling that the government proved that the unlawfully possessed gun taken from him moved in interstate commerce, as required by § 1202(a). Clawson claims that the testimony of Alcohol, Tobacco and Firearms Agent Tommy Whitman concerning the manufacture of the gun and the likelihood that it moved in interstate commerce lacked foundation and was insufficient as a matter of law. The trial court correctly rejected Clawson's motions to strike Whitman's testimony and for a judgment of acquittal based on the insufficiency of the testimony.

Clawson's attack upon Whitman's testimony that the gun was a Mauser semi-automatic pistol manufactured in Germany centers upon Whitman's comparison of the gun with pictures in catalogs, firearms manuals, and reference publications. We reject Clawson's suggestion that Whitman's testimony lacked adequate founda-

tion merely because he performed no tests upon the gun. It was not error for the trial court to conclude that Whitman's reliance upon standard reference works provided adequate foundation for his testimony.

[6] We also reject Clawson's argument that the government's evidence concerning the interstate commerce element of the offense was insufficient as a matter of law. The government is required to prove beyond a reasonable doubt the interstate transportation element of the offense. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (holding that each element of a crime must be proved beyond a reasonable doubt). The government fulfilled this burden.

Whitman concluded that, given the gun's German manufacture, it must have traveled in interstate commerce. *See United States v. Gann*, 732 F.2d 714, 724 (9th Cir.), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984) (holding proper the admission into evidence of expert testimony concerning the location of a weapon's manufacturing plant to demonstrate that the firearm had previously traveled in interstate commerce). The government has no duty to prove that counterfeit Mauser pistols are not being manufactured in Oregon. The evidence was sufficient to support the factual finding that the gun moved in interstate commerce.

**Legality of the Stop**

Clawson made an unsuccessful pre-trial motion to suppress the fruits of the stop of Penn's car. The trial court found that the city police had an adequate basis for stopping the car and that the degree of force used did not exceed the scope of an investigative stop. 644 F.Supp. 187 (D. Or.1986). We agree. This is a legal issue reviewable *de novo*. *United States v. Maybusher*, 735 F.2d 366, 371 n. 1 (9th Cir.1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

Clawson contends that even if the stop was permissible under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Oregon's more restrictive rules regarding temporary detention invalidate the stop.

However, the district court's ruling was correct whether state or federal law is applied.

■ Oregon law, in accord with federal law, allows a law enforcement officer who reasonably suspects that a person has committed a crime to stop and question that person about the crime. Or.Rev.Stat. § 131.615 (1984). Oregon case law establishes that this codification of an officer's authority to stop a person is based on the rationale justifying "stop and frisk" in *Terry*, 392 U.S. at 20–27, 88 S.Ct. at 1879–83. *See State v. Valdez*, 277 Or. 621, 561 P.2d 1006, 1009 (1977); *State v. Brown*, 31 Or. App. 501, 570 P.2d 1001, 1003 (1977). Thus, Oregon courts use the same objective, reasonable suspicion test as do federal courts in analyzing the propriety of a temporary detention. *Valdez*, 561 P.2d at 1009; *Brown*, 570 P.2d at 1003.

The Oregon statute is more restrictive than the *Terry* rule in that it does not necessarily authorize an officer to conduct an investigatory stop when the officer merely suspects a person of preparing to commit a crime. Or.Rev.Stat. § 131.615 (1984). But this statute is inapplicable here because Officers Kochever and Wooden–Johnson suspected with good reason that Clawson and Penn had already committed a series of forgeries. Because the reasonableness standard is the same under the facts of this case for both Oregon and federal law, it makes no difference which law is applied. *United States v. Grajeda*, 587 F.2d 1017, 1019 (9th Cir.1978) (applying California law).

The confrontation between the officers and the suspects began with an investigative stop rather than an arrest. Officer Wooden–Johnson pulled her car behind Penn's car and did not block it. The initial detention was brief. Further detention was necessary only because of the suspects' subsequent actions. Subsequent conduct also made it necessary for the officers to draw their weapons.

A brief investigatory stop like the one conducted here is permissible if, "under the totality of circumstances, the officer is

aware of articulable facts leading to a reasonable or founded suspicion that the person stopped is engaged in criminal activity." *United States v. Corral–Villavicencio*, 753 F.2d 785, 789–90 (9th Cir.1985). The officers in this case acted only after corroborating several details of the informant's tip. The informant, who had been arrested while cashing forged checks, told the police that the two suspects were running a forgery operation. She told them that "Art" and "Kit" were staying at the Chumaree Motel and that they owned a brown El Camino and a blue car. The officers found a brown El Camino in the motel's parking lot. While Kochever was examining the brown El Camino, the officers saw a blue car whose driver started to pull into the parking lot but backed up after the car's headlights illuminated Officer Kochever. Officer Wooden–Johnson saw the car's passenger get out of the car and walk away from the motel. Next, Penn, the driver of the blue car, came over to Kochever and told him that the El Camino was hers.

Next, the officers saw Penn go into a motel room. Soon afterwards, they saw Penn emerge from the motel room and return to the blue car. They then saw an individual emerge from the bushes and get into the car on the passenger side. The tip received by the officers and the corroboration resulting from the officers' observations gave rise to an articulable suspicion that justified the officers' investigative stop.

■ Clawson also challenges the credibility of Kochever's testimony regarding the manner in which Kochever approached Clawson. Clawson says that Kochever seized him with excessive force from the outset. The clearly erroneous standard is employed when reviewing the trial court's ruling on the credibility of a witness. Given that the trial court specifically found Clawson's version of the facts incredible, Clawson has the burden of showing that the trial court's decision was clearly erroneous. He fails to carry that burden.

## Constitutionality of Prior Convictions

■ Under the penalty enhancement provisions of § 1202(a), an individual having three or more prior convictions for robbery or burglary must be sentenced to at least 15 years in prison. All other individuals who have committed a felony are subject to a sentence of not more than two years. Clawson has been convicted of robbery or burglary on three occasions, in 1966, 1973, and 1975. On appeal, Clawson argues that the 1966 conviction was unconstitutional and should not be counted as one of the three convictions required to trigger the penalty enhancement provision.

The government, relying upon *United States v. Lewis*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), mistakenly contends that Clawson may not attack the validity of the challenged prior conviction. In *Lewis*, the Court upheld the defendant's conviction under § 1202(a) even though the previous conviction upon which the defendant's felon status was predicated might have been constitutionally invalid. *Id.* at 65, 100 S.Ct. at 920. The Court held that application of the statute was appropriate even though the previous conviction might have been invalid because the defendant was part of a dangerous group and should not possess a firearm. *Id.* at 66, 100 S.Ct. at 921.

However, *Lewis* was decided before the 1984 amendment to § 1202(a) that added the penalty enhancement provision at issue here. Pub.L. 98–473, § 1802 (1984). Under *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), defendants may collaterally attack prior convictions when faced with a sentence enhancement statute. *Lewis* is inapplicable where prior convictions are used to determine the punishment, rather than to define the offense. Under *Burgett*, we thus must consider Clawson's collateral attack upon his 1966 conviction.

■ Clawson was convicted in 1966 for assault and robbery while armed with a deadly weapon. Clawson argues that he was denied effective assistance of counsel for two reasons: (1) trial counsel also represented a co-defendant and therefore per se had a conflict of interest, and (2) counsel

failed to pursue an appeal or file an *Anders* brief. Because Clawson's co-defendant pleaded guilty before Clawson's trial, the joint representation created no conflict of interest. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court held that an accused person objecting to joint representation and claiming conflict of interest must demonstrate an actual conflict adversely affecting his attorney's performance. *Id.* at 350, 100 S.Ct. at 1719. *See also United States v. Hearst*, 638 F.2d 1190, 1193–94 (9th Cir. 1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981). There must be a showing that the attorney refrained from taking some appropriate action because of the conflict of interest. In the present case, nothing in the record shows the attorney's defense of Clawson was influenced by his previous representation of the co-defendant.

Clawson also attacks the 1966 conviction for counsel's failure to pursue an appeal, citing *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Under *State v. Horine*, 64 Or.App. 532, 669 P.2d 797, *rev. denied*, 296 Or. 237, 675 P.2d 490 (1983), *petition dismissed*, 466 U.S. 934, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1983), an Oregon lawyer is not required to appeal if he, "in exercising professional competence and judgment, determines that there are no non-frivolous issues to raise on appeal." *Id.* at 805. The counsel assigned to represent Clawson on appeal examined the record and applicable law and concluded that "the defendant has no meritorious ground for appeal" before he withdrew without submitting an *Anders* brief. *See id.* at 806 (noting that the constitution requires only that the attorney have "reviewed the law and the record as an advocate and determine[ ] that there are no non-frivolous issues to be raised on appeal").

According to *Horine*, the appellant will be allowed to raise whatever issues he chooses after the attorney notifies him and the court that there are no grounds for appeal. However, "[i]f the appellant *pro se* raises no issues, the conviction will be affirmed." *Id.* Clawson neither sought to appeal nor requested another attorney. Thus, the State of Oregon did not deny Clawson on appeal, and he presents no claim of error in his pre-*Anders* conviction that would justify setting aside that conviction at this time. Accordingly, his collateral attack on the 1966 conviction fails.

### Armed Career Criminal Act

Clawson contends that the Armed Career Criminal Act denies equal protection because there is no rational basis for enhancing the sentences of those convicted of burglary and robbery as opposed to those convicted of all other felonies. He misunderstands the power of Congress.

In *Lewis*, the Supreme Court addressed the equal protection argument regarding § 1202(a) by stating that the distinctions must have "some relevance to the purpose for which a statute is made." 445 U.S. at 65, 100 S.Ct. at 920. We must deem Congress to have acted on a rational basis as long as the predicate crimes of robbery and burglary have a bearing on the community peace. *Id.* at 66, 100 S.Ct. at 921. The statute is not rendered irrational simply because Congress knew about other crimes and did not make them subject to enhancement. The courts do not substitute their views about a statute's wisdom for those of Congress unless the statute is arbitrary. *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Congress reasonably could have increased the firearms penalty for defendants who have three previous robbery or burglary convictions in order to discourage crimes that are infrequently practiced as careers and to discourage the use of guns in such cases. Nothing in the constitution impairs the power of Congress to legislate in this matter.

Affirmed.