O. D. NICKOLS, Petitioner-Appellant,

v.

John R. GAGNON, Respondent-Appellee.
No. 71–1507.

United States Court of Appeals,
Seventh Circuit.

Dec. 21, 1971.

O. D. Nickols, Wayne D. Landsverk, Correctional Internship Program, Univ. of Wisconsin, Madison, Wis., for petitioner-appellant.

Robert W. Warren, Atty. Gen., Madison, Wis., William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before MAJOR, Senior Circuit Judge, FAIRCHILD and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

A Wisconsin jury found appellant guilty of murder. Counsel appointed to represent him on appeal advised the State Supreme Court that he could find no reversible error in the record and was permitted to withdraw; the conviction was affirmed. In collateral proceedings, State courts and the court below rejected appellant's claim that he did not have the effective assistance of counsel guaranteed by the Fourteenth Amendment as interpreted in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. His contention requires us to review the facts of this case, the holding of *Anders,* and the import of the *Anders* opinion.

### I.

The evidence of appellant's guilt included the testimony of an eyewitness, corroborated by a pathologist's findings, and a confession which appellant made when he went to the police station on his own initiative to report the death, details of which were corroborated by physical evidence which he called to the attention of the police.

The attorney appointed to prosecute the appeal did not prepare an advocate's

brief. He did, however, prepare a detailed letter which reflected a professional evaluation of the record and the points which might have been asserted as error. With respect to each, matter demonstrating the absence of merit was identified.[1] The letter reflects the kind of professional analysis which a trained advocate might make as a predicate to the preparation of an appellate brief; it did not, however, contain any argument urging reversal. The letter concluded with the statement:

> "Consequently, I can not, in good conscience pursue an appeal on the state of the record, and ask to be relieved of further representation of the defendant."

Appellant contends that he received less effective representation than a wealthy litigant could have obtained and, therefore, *Anders* entitles him to a fresh appeal handled by another attorney. We, therefore, examine the *Anders* case.

### II.

In 1957, Anders was found guilty of possession of marijuana, then a felony in California, and given an indeterminate sentence of six months to ten years. He appealed as an indigent; the appellate court granted his request for a free transcript and appointed counsel. That attorney informed the court that he would not file a brief because in his opinion there was no merit to the appeal. His letter read:

"Dear Judge Van Dyke:

"This is to advise you that I have received and examined the trial transcript of Charles Anders as it relates to his conviction of the crime of possession of narcotics.

"I will not file a brief on appeal as I am of the Opinion that there is no merit to the appeal. I have visited and communicated with Mr. Anders and have explained my views and opinions to him as they relate to his appeal.

"Mr. Anders has advised me that he wishes to file a brief in this matter on his own behalf.

"Very truly yours,

. . . . . . ,"[2]

The California court permitted Anders to file a brief in his own behalf, but refused to appoint another lawyer for him. His conviction was affirmed. Ultimately, this procedure was challenged by a habeas corpus petition filed in the federal court and reviewed in the Supreme Court. The question presented by Anders' certiorari petition was: "May a State appellate court refuse to provide counsel to brief and argue an indigent criminal defendant's first appeal as of right on the basis of a conclusory statement by the appointed attorney on appeal that the case has no merit and that he will file no brief?"[3]

The Supreme Court holding in the *Anders* case, which answered that question in the negative, is not dispositive here because the letter prepared by appellant's attorney was certainly not a mere "conclusory statement."[4] It included a reasoned exposition of the basis for his conclusion. Nevertheless, even

---

1. The letter reviewed the sufficiency of the evidence, the voluntary character of both the oral and written confession, the advice given to the defendant in the light of Miranda v. Arizona, the propriety of the seizure of a gun from appellant's vehicle pursuant to his instructions and consent, possible error resulting from a visit to the morgue for a view of the decedent in the light of McKinley v. State, 37 Wis.2d 26, 154 N.W. 2d 344 (1967), and possible errors in the admissibility of evidence and in the trial court's instructions.

2. See brief for petitioner in the Supreme Court of the United States in Anders v. California, O.T.1966, No. 98, pp. 2–3. (Hereafter *Anders* brief.)

3. Id., at p. 2.

4. Counsel's letter is too long to quote in full, but footnote 1, *supra*, indicates the type of issues which were discussed and evaluated with respect to the particular facts of the case in the 4-page, single-spaced, typewritten letter. This letter is in marked contrast to the letter condemned in *Anders*, reproduced in full in text at note 2, *supra*.

though the holding in *Anders* is not controlling here, we must consider the import of the Court's opinion.

## III.

The *Anders* opinion has been interpreted as requiring a request to withdraw to "be accompanied by a brief arguing anything in the record that might support the appeal." [5] Under this interpretation of *Anders*, an indigent has a constitutional right to have his appellate counsel advocate reversal as effectively as possible even though he has concluded that the appeal is without merit.

This interpretation attaches paramount importance to the *form*, rather than the *substance*, of a lawyer's representation. It is based on a slight, though critical, modification of the language of the *Anders* opinion, and fails to read that language against the reasons which Anders had advanced for holding the California practice unconstitutional.

Anders forcefully argued that the conclusory no merit letter which his lawyer had prepared provided the Court with no assistance whatsoever in making its review of the record, and of particular significance, no assurance that the lawyer had, in fact, discharged his obligation to his client in a competent and professional manner. The danger that a busy or inexperienced lawyer might opt in favor of a one sentence letter instead of an effective brief in an individual marginal case. is real, notwithstanding the dedication that typifies the profession.[6] If, however, counsel's ultimate evaluation of the case must be supported by a written opinion "referring to anything in the record that might arguably support the appeal," 386 U.S. at 744, 87 S.Ct. at 1400, the temptation to discharge an obligation in summary fashion is avoided, and the reviewing court is provided with meaningful assistance.[7]

Contrary to the interpretation of *Anders* for which appellant contends, that opinion does not require a petition for withdrawal to be accompanied by a brief *"arguing* anything in the record that might support the appeal." [8] Nor does

5. Tentative draft of American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, p. 298. (Hereafter ABA Standards.)

6. In his brief in the Supreme Court, Anders argued:
"Second, the determination of whether or not the indigent will be represented is shifted from a disinterested appellate court to an attorney who often will view the appointment as a nuisance. Many attorneys, of course, will carefully comb the record, engage in thorough research and analysis, and set forth in brief and oral argument every contention which can be made in good faith. Many others, however, will understandably see themselves as 'friend of court' and will weigh, on the one hand, the probability of success on appeal against, on the other, the time burden imposed both on the attorney and the court if full argument is presented. This will lead to the filing of a large number of 'no merit letters' and the consequent denial of representation on appeal. The experience in the District Court of Appeal in which this case was tried indicates that in a significant portion of cases in which counsel are appointed 'no merit letters' are written and briefs are not filed (App. B)." (PP. 12–13)

7. "The practice of the District of Columbia Circuit Court of Appeals affords more adequate protection. Counsel must convince the court that the issues are truly 'frivolous.' This must be done in a documented memorandum which analyzes the facts and applicable law. There is little time advantage in preparing such a memorandum over filing a brief on the merits and hence the temptation to withdraw where the chances are slim is minimized. At the same time, however, the procedure provides a means for appointed counsel to withdraw in a case where he believes that he can make no argument in good faith." (*Anders* brief, pp. 16–17.)

8. The ABA Standards tentative draft substitutes the word "arguing" for the

the word "brief" itself necessarily connote an adversary presentation of points that are demonstrably without merit. It does connote a professional exposition of all points which have sufficient significance that trained counsel would at least identify and consider them in his evaluation of an appeal.

The *Anders* opinion requires appointed counsel to represent his client effectively—not merely to serve as a friend of the court—and to demonstrate in writing that he has discharged his professional responsibilities. It requires that the indigent receive substantially the same assistance of counsel as one who can afford to retain an attorney of his choice.[9] We do not, however, read the opinion as requiring appointed counsel to make arguments that he would not consider worthy of inclusion in a brief submitted on behalf of a paying client. Nor do we construe the opinion as requiring counsel to urge reversal if he can find no merit in the appeal.

Appellant argues, and others have so interpreted the *Anders* opinion, that there is a critical though narrow distinction between complete frivolity and absence of merit.[10] In this case, counsel stated that "after careful perusal of the record and of the law, I can find no possible merit in the appeal." Since he did not use the words "wholly frivolous" which appear in the *Anders* opinion, it is contended that reversal is required. This is not a fair reading of that opinion. We believe the case focuses attention on the substance and quality of counsel's representation rather than the form of words used to express his conclusion. Thus, the "wholly frivolous" concept is not defined by abstract standards, but rather in terms of counsel's determination after a conscientious examination of the record.[11] In this case counsel's letter demonstrates that such a conscientious examination was made, and since we agree with his conclusion that there was "no possible merit in the appeal," we attach no constitutional significance to the particular words used to express his conclusion.

The fundamental shortcoming of the procedure condemned by *Anders* was its failure to assure an indigent substantial equality with nonindigents on appeal.[12]

words "referring to" which appear in the emphasized portion of the following excerpt from the *Anders* opinion:
"His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief *referring* to anything in the record that might arguably support the appeal." 386 U.S. 744, 87 S.Ct. 1400.

9. "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae*. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court." 386 U.S. at 744, 87 S.Ct. at 1400.

10. "The *Anders* decision thus appears to rest narrowly on the distinction between complete frivolity and absence of merit. The latter is not enough to support either a request by counsel to withdraw, nor the granting of such a request by the court." ABA Standards, p. 297.

11. The sentence in which the words "wholly frivolous" appear reads as follows:
"Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744, 87 S.Ct. at 1400.

12. "The Fourteenth Amendment requires a State to appoint counsel to represent an indigent criminal defendant who requests representation on his first appeal as of right. The object of the requirement is to assure to an indigent both a meaningful adversary process as well as substantial equality with non-indigents on appeal. Neither object is achieved where provision of counsel to brief and

It has been urged that equality can only be achieved if appointed counsel is required to argue earnestly for reversal even if he is convinced that his arguments have no merit.[13] Again, however, we believe that such an interpretation of *Anders* improperly elevates form over substance. If there is no merit to a proposition, the possibility that an advocate's charade would persuade an appellate court to the contrary is remote. On the other hand, if a substantial issue is identified by an adequate letter from counsel, his evaluation is not apt to foreclose its careful consideration by the court. Indeed, there may be a greater risk that vigorous argument of two or three frivolous points would actually conceal a substantial problem lurking in a record than a dispassionate review and appraisal of all of the points that might arguably support reversal.

If retained counsel are effective advocates and attentive to their professional responsibilities, they will seldom advance contentions that are groundless.[14] The mere fact that such a lawyer is making an argument should indicate that it has sufficient substance to merit the court's attention. If appointed counsel were obligated in every case to make arguments that amount to little more than meaningless charades, a subtle but invidious distinction between appointed and retained counsel might develop.[15] The indigent, unlike the nonindigent defendant, would lose the benefit of retained counsel's implicit representation to the court that he believes in the legal substantiality of the contentions advanced.

Every defendant does not have the constitutional right to be represented by Clarence Darrow. Perfect equality between indigents and nonindigents, or among members of the class of nonindigents itself, is impossible to achieve. We believe the principle of substantial equality required by the *Anders* opinion as we construe it was satisfied in this case. Appellant received the kind of professional evaluation of his appeal which competent retained counsel would have provided to his client, and would have derived no additional benefit from an argument by a lawyer, whether ap-

argue the appeal is denied because the appellate court without benefit of counsel determines on review of the full trial record that the appeal is without merit or that counsel would not be advantageous to the indigent defendant. Nor are these objects any more achieved where, as here, provision of counsel to brief and argue the appeal is denied because the attorney appointed by the court to represent the indigent states in conclusory terms that the appeal is without merit and that he will not file a brief in its support." *Anders* brief, pp. 4–5.

13. Although such practice appears to have been followed in the District of Columbia, and may well produce benefits which make it worthwhile, we do not understand it to be mandated by the Fourteenth Amendment. See footnote 3 of the *Anders* opinion, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493; see also ABA Standards, pp. 299–301.

14. "In his representation of a client, a lawyer shall not:

\* \* \* \* \*

"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law."
DR 7–102(A) (2), ABA Code of Professional Responsibility.
See also Rule 11, Fed.R.Civ.P.

15. This distinction is recognized in the tentative draft of ABA Standards at pp. 300–301:
"On the premise that the lawyer is of greater aid to the court by remaining with a weak or groundless appeal than by withdrawing, the preferable position is for him to remain even at some cost to the concept of professional independence of the lawyer. The lawyer cannot properly engage in advocacy calculated to mislead or deceive the court, and no lawyer should do so. *But, in this situation, appearance of counsel is not an implicit representation to the court that he believes in the legal substantiality of the contentions advanced. The court should not take an absence of a request to withdraw as an indication of the lawyer's own estimate of the case.*" (Emphasis added.)

pointed or retained, who could find no possible merit in the appeal after making a conscientious study of the record and the applicable law.

### IV.

In addition to guaranteeing the indigent appellant the effective assistance of counsel and providing the court with meaningful assistance in its review of a case, the procedure mandated by *Anders,* as we understand it, produces still another important protection which is implicit, if not explicit, in the Supreme Court's reasoning. Appointed counsel's opinion, or "brief," to use the Court's term, referring to anything in the record which might arguably support reversal, should also disclose points which may ultimately support a federal constitutional claim even though then foreclosed as a matter of state law. Thus, one of the potential errors which would have been identified in the *Anders* case itself, if such a brief had been filed, was the fact that Anders' decision not to testify was the subject of comment by both the prosecutor and the trial judge.[16] Such comment was then permissible as a matter of California law, but is now foreclosed by the Fourteenth Amendment. See Griffin v. California, 380 U. S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

In the case before us, the fact that appellant was required to view the decedent at the morgue was clearly not error as a matter of Wisconsin law.[17] We are also satisfied that the incident raises no federal constitutional question.[18] We mention it because it illustrates how the diligence of counsel in meeting the requirements of *Anders* has made it possible for a federal court, as well as the state appellate process, to

make sure that the indigent's conviction is the product of the fair procedure mandated by the Fourteenth Amendment.

The order denying appellant's petition for habeas corpus is affirmed.

---

16. *Anders* brief, p. 3.

17. Counsel's letter correctly indicates that the Wisconsin case of McKinley v. State, 37 Wis.2d 26, 154 N.W.2d 344 (1967), is inapplicable since in the present case no statement was taken from defendant after his visit to the morgue.

18. The practice of taking a murder suspect to view the victim, may, of course, be deplorable if not absolutely necessary for identification purposes. But absent a showing of prejudice, the practice does not deprive him of a federal constitutional right.