## STATE of Wisconsin EX REL. Ellis T. McCOY, Petitioner,

v.

## WISCONSIN COURT OF APPEALS, DISTRICT 1, Respondent.

Supreme Court

*No. 86–0172–W. Argued January 5, 1987.—Decided April 9, 1987.*

(Also reported in 403 N.W.2d 449.)

ABRAHAMSON, J., HEFFERNAN, C.J. and BABLITCH, J., dissent.

For the petitioner there were briefs and oral argument by *Louis B. Butler, Jr.,* assistant state public defender.

For the respondent the cause was argued by *James H. McDermott,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J.   In this original action for a declaratory judgment, we are called upon to consider the constitutionality of sec. (Rule) 809.32(1), Stats. (1983–84),[1] which requires that appointed counsel, upon determining that a criminal appeal would be frivolous, submit a brief to the court of appeals which includes an explanation as to why any issues which might arguably support an appeal lack merit. Petitioner Louis B. Butler, the public defender in this case who was assigned to handle the appeal of defendant Ellis T. McCoy's criminal conviction, asserts that the defendant's constitutionally protected right to counsel, guaranteed by the sixth amendment to the United States Constitution and by art. I, sec. 7 of the Wisconsin Constitution, is violated by the so-called "no-merit brief" requirement. We disagree and now uphold the constitutionality of the rule contained in sec. 809.32(1).

The facts in this case are not in dispute. The defendant was convicted in Milwaukee county circuit

[1]Section 809.32(1) provides that, "If an attorney appointed under s. 809.30 or ch. 977 is of the opinion that further appellate proceedings on behalf of the defendant would be frivolous and without any arguable merit within the meaning of Anders v. California, 386 U.S. 738 (1967), the attorney shall file with the court of appeals 3 copies of a brief in which is stated anything in the record that might arguably support the appeal and a discussion of why the issue lacks merit. The attorney shall serve a copy of the brief on the defendant, who may file a response to the brief within 30 days of service."

court on December 2, 1983, of one count of second-degree sexual assault, sec. 940.225(2)(a), Stats., and of one count of abduction, sec. 940.32(1).[2] In preparing for the appeal, petitioner concluded that further appellate proceedings were not warranted and that any issues which could be advanced in support of an appeal were without arguable merit under *Anders v. California,* 386 U.S. 738 (1967), and under sec. 809.32(1). Defendant was then advised of his available options, which included (1) voluntarily dismissing the appeal, (2) proceeding with the appeal *pro se,* or (3) submitting a no-merit brief, pursuant to sec. 809.32(1), to the appeals court. Defendant chose the no-merit brief option.

Prior to filing a no-merit brief, however, petitioner filed a motion in the appeals court, seeking to determine the constitutionality of sec. 809.32(1) and to clarify the scope of representation on appeal. The motion was denied on September 7, 1984, on standing grounds, with the appeals court stating that since the no-merit brief had not yet been filed, no justiciable controversy existed.

Petitioner filed a no-merit brief on October 22, 1984. The appeals court, on April 16, 1985, ordered that this brief be struck for noncompliance with sec. 809.32(1) and that a new brief be filed. Petitioner's brief complied with the requirements set forth in sec. 809.32(1), except that it did not contain a statement of reasons why the issues which might arguably support an appeal lacked merit.

Counsel petitioned this court on April 24, 1985, for a supervisory writ of prohibition and declaration of relator's rights, seeking to resolve the constitutional

[2]*State v. Ellis T. McCoy,* No. 84–929-CR-NM.

issue. On May 8, 1985, this court denied the petition, on the grounds that petitioner had an adequate remedy at law in the court of appeals. Petitioner renewed his motion in the court of appeals to determine the constitutionality of sec. 809.32(1), and the court again denied the motion, stating that any determination of the constitutionality of the no-merit rule should be made by this court. Thereafter, defense counsel renewed his petition to this court, which was granted on March 27, 1986.

Petitioner asserts that defendant's constitutionally guaranteed right to counsel, which includes the right to effective assistance of counsel, *State v. Ludwig,* 124 Wis. 2d 600, 606, 369 N.W.2d 722 (1985); *Strickland v. Washington,* 466 U.S. 668, 686 (1984), is violated by the no-merit requirement contained in sec. 809.32(1). Petitioner cites the decision of the United States Supreme Court in *Anders,* which is explicitly referred to in Wisconsin's no-merit rule, as the primary source of support for this conclusion. We agree that *Anders* should be the touchstone of our analysis, although we do not believe that it compels a finding of unconstitutionality. We therefore begin our discussion of an attorney's responsibilities to a criminal client upon appeal with an analysis of *Anders.*

In *Anders,* defense counsel, after consulting with his client and studying the trial record, determined that further appellate proceedings on behalf of his indigent client would be meritless. He so notified the appeals court by letter[3] and requested to withdraw as

---

[3]Counsel's letter stated, "'I will not file a brief on appeal as I am of the opinion that there is no merit to the appeal. I have visited and communicated with Mr. Anders and have explained

counsel for the defendant. The Court in *Anders* did not believe that counsel's letter, articulating only a "bare conclusion" regarding the merits of defendant's appeal, satisfied constitutional requirements. 386 U.S. at 742.

The procedure followed by defense counsel in *Anders*, the high Court held, was constitutionally defective because it "did not furnish petitioner with counsel acting in the role of advocate," *id.* at 743, and "[t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity." *Id.* at 744. The Court then explained what counsel's proper role on appeal should be:

> "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.

my views and opinions to him ... [H]e wishes to file a brief in this matter on his own behalf.'" 386 U.S. at 742.

On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Id.*

"The utility of this procedure is that appointed counsel would not be force[d] ... to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." *Id.* at 745.

The Wisconsin procedure goes beyond *Anders* and requires that the attorney file a brief which, in addition to articulating anything in the record which might support an appeal, includes a statement indicating why the appeal lacks merit. It is this latter requirement to which the petitioner objects and on which we now focus.

Petitioner contends that the discussion requirement is directly contrary to the court's admonition in

*Anders* that counsel on appeal is not to act as *amicus curiae,* but rather is obligated to act as advocate to the best of his or her ability. For support, petitioner additionally cites *Evitts v. Lucey,* 469 U.S. 387 (1985), which states that, citing *Anders,* appellate counsel "must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." *Id.* at 394. He asserts that when counsel is required to discuss the reasons why an appeal lacks merit, he or she is in effect abdicating the advocate's role and is instead arguing against the client. This, petitioner argues, is proscribed by *Anders.*

In addition, petitioner argues that a simple definitional approach compels a finding that if counsel is required to comply with the no-merit rule, he or she is no longer "advocating" appellant's cause.[4] When counsel files a no-merit brief which complies with the discussion requirement, petitioner argues, he or she is merely acting as *amicus curiae,* advancing a rationale which is more consistent with the views of the court than with the views and interests of defendant, counsel's client.[5]

---

[4]According to petitioner, an advocate "is one who supports, defends or pleads another's cause."

[5]Petitioner offers two definitions of *amicus curiae,* citing *Black's Law Dictionary* 75 (5th ed. 1979), which states that *amicus curiae* "means, literally, friend of the court. A person with strong interest in or views on the subject matter of an action may petition the court for permission to file a brief, ostensibly on behalf of a party but actually to suggest a rationale consistent with its own views." Also cited is *Webster's New World Dictionary* 44 (2d ed. 1972), defining *amicus curiae* as "a person who offers, or is called in, to advise a court on some legal matter."

Petitioner then surveys cases from other jurisdictions which ostensibly support his position that appellate counsel must not deviate from the advocate's role and that the Wisconsin procedure is at odds with that principle. These cases, petitioner argues, demonstrate that counsel is not to play any part in determining the merits of the appeal. *See, e.g., State v. Allen,* 99 N.J. Super. 314, 322, 239 A.2d 675, 679 (1968), stating that "[o]nce a defendant exercises his right to appeal, his appellate counsel must be an advocate and he does not decide whether the claim will be successful as argued by the State. ... That task is for the courts."

We do not mean to disparage the importance of counsel's role as advocate. We are sensitive to the rights of a criminal defendant, especially an indigent defendant, to effective representation. We have previously recognized, in a case decided prior to the enactment of the no-merit rule, that the *Anders* analysis compels appointed counsel to "perform his duties as adequately as paid counsel so the indigent will not be deprived of adequate representation because of his indigency." *Cleghorn v. State,* 55 Wis. 2d 466, 471, 198 N.W.2d 577 (1972). We reaffirm our belief in that principle. However, we are nevertheless compelled to reject petitioner's proffered analysis.

We now uphold the constitutionality of the no-merit brief rule. While *Anders* does not sanction the use of the discussion requirement, it does not proscribe it, either. Our interpretation of *Anders* is consistent with cases which have validated the discussion requirement and which have construed that requirement to harmonize with, rather than diverge from, the *Anders* holding. *See, United States v. Edwards,* 777 F.2d 364 (7th Cir. 1985); *Nickols v. Gagnon,* 454 F.2d 467 (7th Cir. 1971). The court in *Edwards*

explicitly reaffirmed the attorney's obligation to file a brief which includes a statement indicating why arguments ostensibly supporting an appeal are without merit. 777 F.2d at 365–66. Similarly, in *Nickols,* the seventh circuit examined the adequacy of a letter, which included a discussion of "matter[s] demonstrating the absence of merit [of issues arguably supporting an appeal]," submitted by the defense attorney who was seeking to withdraw as counsel. 454 F.2d at 469. In deciding that the letter was adequate, the court contrasted counsel's letter which "included a reasoned exposition of the basis for his conclusion," *id.,* with the short letter submitted by counsel in *Anders,* which contained only a "conclusory statement" of the frivolity of the appeal. *Id.,* n. 4. Thus, the court in *Nickols* also contemplated, consistent with sec. 809.32(1), Stats., the discussion requirement and, further, did not believe that *Anders* in any way prohibited it. Likewise, we do not believe that *Anders* in any way prohibits it. Petitioner's reliance on *Evitts* is also misplaced, because it does not prohibit the discussion requirement, either.

Petitioner argues that when an attorney submits a statement which includes a discussion of why his or her client's appeal lacks merit, that attorney is, in effect, like the judge, "deciding" the merits of the appeal. This, petitioner argues, is impermissible because "[i]t is not counsel's prerogative to determine finally the merits of an appeal, but, as directed in *Anders,* 'the court—not counsel ... decide[s] whether the case is wholly frivolous.'" *Turner v. Haynes,* 162 W. Va. 33, —, 245 S.E.2d 629, 631 (1978). *See also, Rhodes v. Leverette,* 160 W. Va. 781, 239 S.E.2d 136 (1977); *People v. Feggans,* 67 Cal. 2d 444, 432 P.2d 21, 62 Cal. Rptr. 419 (1967); *State v. Varner,* 692 P.2d 753

(Utah 1984); *State v. Shattuck,* 140 Ariz. 582, 684 P.2d 154 (1984); *State v. Duncan,* 57 Ohio App. 2d 93, 385 N.E.2d 323 (1978).

We similarly believe that it is ultimately the court's, and not counsel's, prerogative to judge the relative merits of an appeal; nevertheless, we do not believe that the case authority cited by petitioner compels a finding that the discussion rule is unconstitutional. For example, counsel in *Turner* concluded that his client's appeal prospects would be without merit and so informed his client. Counsel, however, did not provide his client with a copy of the trial transcript, and an appeal was never pursued. In addressing defendant's claim that counsel's actions deprived him of his right to appeal, the court held that, applying *Anders,* counsel did not fulfill his obligation to his client. The court reasoned that counsel—not the court—ultimately decided that the appeal was without merit. 162 W. Va. at —, 245 S.E.2d at 631. It is evident that the court in *Turner* was never even given the opportunity to decide whether it agreed with counsel's conclusion of lack of merit. This was the constitutional infirmity.

For a similar holding, *see, Allen,* 99 N.J. Super. 314, 239 A.2d 675, where the court also found that defendant was deprived of his right to effective assistance of counsel. The defendant was not informed by his attorney that he had the right to appeal or that he had the right to counsel to prosecute an appeal. Again, the court there was never given the opportunity to decide whether counsel's conclusion that the appeal was meritless was adequately supported by case law, the record, or the applicable statutes.

To the contrary, when a court in Wisconsin is presented with counsel's conclusion that an appeal

99

would be meritless and in addition has before it a summary of the case or statutory authorities which might compel that conclusion, it, and not counsel, decides whether the discussion of why the appeal lacks merit should be accepted. If the Wisconsin rule merely permitted counsel to summarily conclude that the appeal was meritless, without including even a perfunctory discussion of the applicable facts or case authorities in support of that conclusion, *see, e.g., Feggans,* 67 Cal. 2d at 448, 432 P.2d at 23–24, 62 Cal. Rptr. at —, the same concerns raised in *Anders* regarding the constitutional insufficiency of a mere conclusory statement of no merit might arguably apply. That, however, is not the situation here.

We interpret the discussion rule to require a statement of reasons why the appeal lacks merit which might include, for example, a brief summary of any case or statutory authority which appears to support the attorney's conclusions, or a synopsis of those facts in the record which might compel reaching that same result. We do not contemplate the discussion rule to require an attorney to engage in a protracted argument in favor of the conclusion reached; rather, we view the rule as an attempt to provide the court with "notice" that there are facts on record or cases or statutes on point which would seem to compel a conclusion of no merit. Thus, we do not believe the rule requires an attorney to argue against the client; rather, we believe the rule requires an attorney to fulfill a duty that co-exists with the duty owed to the client—that duty which is owed to the court. The court will be better equipped to make the correct decision about the potential merits of the appeal if it has before it not only the authorities which might favor an appeal, but also the authorities which

might militate against it. The court, as *Anders* mandates, is still the final arbiter, and it alone has the responsibility to determine whether the appeal is, in fact, frivolous. Our decision does not deviate from that principle.

We believe that the Wisconsin procedure serves several useful functions. In addition to providing the court with assistance in its review of the record, it assures the court that counsel has "discharged his obligation to his client in a competent and professional manner." *Nickols,* 454 F.2d at 470. That is, the Wisconsin procedure assures the reviewing court that an indigent defendant is receiving exactly that type and level of assistance that a paying client would be receiving under similar circumstances. When the court has before it a reasoned summary of the law militating against further apellate proceedings, it can be assured that the attorney has made an inquiry into the relative merits of the appeal and that the attorney's withdrawal request is valid and grounded in fact and in the law.

The Wisconsin procedure, once again, can be contrasted to that followed in *Anders,* where the attorney simply stated that an appeal would be frivolous and so informed the court in conclusory fashion. It was this conclusoriness that the court found constitutionally offensive in *Anders,* 386 U.S. at 742, because it was indicative of or at least implied a lack of diligence and preparation by the attorney such that it was evident that the criminal defendant was not obtaining the same type and quality of representation that he or she was likely to obtain from private counsel. Since the Wisconsin procedure avoids the type of conclusoriness that *Anders* found offensive, the same concerns raised in *Anders* regarding the quality

and equality of attorney representation are simply not as relevant here.

There is case support in other jurisdictions for the conclusion we have reached. *See, Caraway v. Texas,* 560 S.W.2d 690, 691 (Tex. Crim. 1978); *People v. Lowery,* 86 A.D.2d 537, 538, 445 N.Y.S.2d 992, 993 (1982), stating that "[a] mere mechanical statement that there are no valid issues that could legitimately be raised on an appeal is insufficient"; *Smith v. State,* 496 So. 2d 971, 974 (Fla. Dist. Ct. App. 1986); *Commonwealth v. McClendon,* 495 Pa. 467, 473, 434 A.2d 1185, 1188 (1981).

We reiterate that an indigent criminal defendant, while undisputedly entitled to receive the same level of representation that a paying defendant would receive, is not entitled to receive more than a paying client would receive. *See,* e.g., *Nickols,* 454 F.2d at 472–73. "When [the] attorney has reviewed the law and the record as an advocate and determines that there are no non-frivolous issues to be raised on appeal, the appellant has received what is constitutionally required." *State v. Horine,* 64 Or. App. 532, 548, 669 P.2d 797, 806 (1983).[6]

---

[6]Although involving a slightly different fact situation, *McClendon* is particularly instructive since it included a detailed statement regarding the "discussion of lack of merit" requirement. It stated that, "Once we are satisfied with the accuracy of counsel's assessment of the appeal as being wholly frivolous, counsel has fully discharged his responsibility. The role of an advocate, insisted upon in *Anders,* refers to the manner in which the record was examined in an effort to uncover grounds to support the appeal. Where counsel has in good faith satisfied that obligation and found the appeal to be wholly frivolous, he can do no more. We reject the view that his explanation of why there is no basis for an appeal should be interpreted as reflecting counsel's

A final consideration which we believe is important to our decision is one which has been alluded to already, namely, the discussion requirement serves as a significant administrative aid to the reviewing court. It first provides a basis for the reviewing court to judge whether an appeal is meritorious. The brief in support of appeal, combined with the "no-merit" discussion, gives the court far more than just a "cold record" to look at; rather, the court has before it both the arguments in support of an appeal and a statement which at least refers to case authorities or factual references which do not support an appeal. Thus, the court has a substantial base of authority to refer to in making its own, independent evaluation of the case. This makes it less likely that the court will overlook important legal authorities which would either support or militate against continued appellate proceedings. Hence, the discussion requirement operates as a judicial aid, serves an informational function and, equally important, enables the court to operate in a more efficient, expeditious and cost-saving manner. With an increase in the number of criminal appeals, this concern should be obvious.

Because we find that adherence to sec. 809.32(1), Stats., does not operate to deprive defendant of any of his constitutional rights, and given the other significant considerations we have enumerated, we affirm the constitutionality of the Wisconsin procedure. Therefore, the petition for a supervisory writ of prohibition is denied.

lack of concern in the client's cause. Nor can that fact be assigned as a reason for concluding that the client did not receive this constitutionally protected right of representation." 495 Pa. at 473–74, 434 A.2d at 1188.

*By the Court.*—Rights declared.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* Our court. rule requiring an appointed appellate defense lawyer in a criminal case to explain in a no-merit report the weaknesses in the client's appeal contravenes the *Anders* decision of the United States Supreme Court, complicates the already complex ethical dilemma faced by an appointed defense lawyer who decides that an appeal of the client's case would be frivolous, and is unnecessary to achieve the purposes which the majority believes justify the imposition of the requirement. Because I believe that our rule violates the defendant's sixth amendment right to effective assistance of counsel, and because I believe this court should respond by commissioning a study of a court rule when, as in this case, a challenge to a court rule reveals flaws in the rule, I dissent.

In *Anders v. California,* 386 U.S. 738 (1967), the United States Supreme Court undertook the difficult task of reconciling the professional and personal integrity of appointed appellate defense counsel with the constitutional right of criminal defendants to the assistance of counsel. ABA Standards Relating to the Defense Function, sec. 4–8.3, Commentary (2d ed. 1980). The Court achieved this reconciliation by providing that counsel convinced of the frivolousness of a client's appeal may request to withdraw from the case by following certain procedures, including filing a brief with the court that identifies "anything in the record that might arguably support the appeal." *Anders* appears to rest on the distinction between complete frivolity and absence of merit, the former justifying withdrawal, the latter not justifying withdrawal. *But see Cleghorn v. State,* 55 Wis. 2d 466, 475,

198 N.W.2d 577 (1972). *Anders* has been criticized as forcing appointed appellate defense attorneys to "brief the unbriefable," because a defense attorney who could find something in the record arguably supporting an appeal would not request to withdraw in the first place. ABA Standards Relating to the Defense Function, sec. 4–8.3, Commentary.

The *Anders* decision has drawn more than its share of criticism from courts, commentators and practitioners. Courts have interpreted *Anders* in a wide variety of ways and have adopted alternate mechanisms for dealing with the difficult dilemma at the heart of the case. *See, e.g., State v. Horine,* 64 Or. App. 532, 669 P.2d 797 (Ct. App. 1983); *State v. McKenney,* 98 Idaho 551, 568 P.2d 1213 (1977); *People v. Wende,* 25 Cal. 3d 436, 158 Cal. Rptr. 839, 600 P.2d 1071 (1979). Commentators have found little that pleases them with the decision. *See, e.g.,* Hermann, *Frivolous Criminal Appeals,* 47 N.Y.U.L. Rev. 701 (1972); Pengilly, *Never Cry Anders: The Ethical Dilemma of Counsel Appointed to Pursue a Frivolous Criminal Appeal,* 9 Crim. Just. J. 45 (1986). Finally, practitioners find the *Anders* procedure either unworkable or distasteful or both.

Nevertheless, *Anders* is, as the majority points out, the "touchstone" of analysis in this case. *Anders* requires an appointed appellate defense attorney to act as an advocate even as he or she requests to withdraw from a case. The majority asserts that the discussion requirement in the court rule at issue in this case keeps appointed appellate defense counsel in the role of advocate because it insures "that the attorney has made an inquiry into the relative merits of the appeal and that the attorney's withdrawal request is valid and grounded in fact and in the law."

105

Opinion at page 101. It is not, however, the requirement that counsel search the record and research the law that the petitioner objects to in this case, but rather the requirement that counsel then place before the court any arguments that he or she has discovered which militate against the client's cause.

The United States Supreme Court specifically noted that it did not intend to "force appointed counsel to brief his case against his client." Defense counsel should be the client's advocate, not adversary. *Anders,* 386 U.S. at 745.

The majority explains that appointed appellate defense counsel's inclusion of arguments against the defendant is necessary to put the court on notice that the arguments in favor of the client are frivolous and to assist the court to make a correct decision about the potential merits of the appeal. Opinion at pages 100–101, 103. As the court recognized in *Anders,* 386 U.S. at 745, however, appointed appellate defense counsel provides sufficient assistance to the court simply by pointing out the possible arguments for the client. Appointed appellate criminal defense counsel's request to withdraw in itself puts the court on notice that counsel considers the arguments in the no-merit brief frivolous. Once raised, frivolous arguments by their very nature should not be difficult for a court to evaluate on its own without counsel supplying case authorities or factual references which militate against the appeal. Consequently, I conclude that there is no need to require defense counsel to assist the court by briefing the case against the client.

Counsel's filing a brief setting forth arguments against defendant's position is a task that benefits the court but not the client. Accordingly, such a task is

more properly assigned to an amicus curiae than to an advocate. The *Anders* court condemned procedures that place appointed appellate defense counsel in the role of amicus curiae rather than in the role of advocate for the defendant. 386 U.S. at 744. The Wisconsin requirement that appointed appellate defense counsel who files a no-merit brief must discuss therein the reasons why the appeal lacks merit violates the plain meaning and clear intent of *Anders* by transforming appointed appellate defense counsel from an advocate into an adversary or an amicus.

The disenchantment with our rule evidenced in this case and the widespread disenchantment with *Anders* indicate that the dilemma of appointed counsel who does not wish to prosecute a frivolous appeal deserves additional study to devise a solution that is more satisfactory to counsel yet is equally sensitive to the rights of indigent defendants, to the responsibilities of appointed counsel, and to the needs of the judicial system.

In its rulemaking capacity this court has the power to authorize a study of the rule and its effect on appointed appellate defense attorneys who feel that their clients' appeals are frivolous but who nevertheless cannot dissuade their clients from prosecuting the appeals. Such a study is the kind of response that this court should consider when presented with a challenge that raises significant doubts concerning the wisdom of the rule, even if the constitutional arguments against the rule do not persuade the court. Thus, I believe that even if the majority is convinced the rule is constitutional, it should initiate a reconsideration of the rule.

Accordingly, I dissent.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM A. BABLITCH join in this dissent.